## The People ex. rel. George Hanselmann v. The Quartermaster General.

*Bounty. Discretionary power of Governor in payment of.* The act authorizing the payment of a State bounty, not exceeding fifty dollars, to each volunteer from this State mustered into the military service of the United States (*Laws of* 1863, *p.* 60,) conferred upon the Governor a discretionary power in the exercise of which he might confine the bounty to such organizations or such branch of the service as, in his opinion, the public interest might require, provided it should be uniform to all coming within the terms of the order.

The word "each" is to be understood only as restrictive of the amount that could be paid, and not as designating the persons who should be included within the offer of bounty.

When the Governor, by a published order, offered a uniform bounty of fifty dollars to each volunteer who should enlist and be mustered into the service of the United

States "in any regiment or battery." *Held*, that the terms of such order did not embrace volunteers in a separate company like the State Provost Guard.

*Heard November 1st.   Decided November 11th.*

Motion for a mandamus.   The facts are fully stated in the opinion.

*Robinson & Brooks* for the relator.

*A. Williams, Attorney General,* for the respondent.

COOLEY J.

The relator was a member of the Michigan Provost Guard, a company organized in this State and mustered into the military service of the United States, prior to the act of the Legislature approved March 6, 1863, " to authorize the payment of a State bounty to volunteers mustered from this State into the military service of the United States," *Laws of* 1863, *p.* 60. His own enlistment was subsequent to the passage of this act, and he claims to be entitled to a bounty by virtue of its provisions.

The act authorized the Governor, in his discretion, to cause to be paid from the war fund such uniform bounty as he should deem necessary, not exceeding fifty dollars, to each volunteer, non-commissioned officer, musician or private, that might enlist and be mustered into the service of the United States, in any regiment, battery or company theretofore mustered from this State into the military service of the United States, or then organizing in the State for such service ; and the Quartermaster General was required to pay to each volunteer, mustered into the service as aforesaid, as soon thereafter as practicable, such bounty as the Governor should have directed to be paid.

It appears by the papers submitted to us, that the Adjutant General of the State, under the direction of the Governor, published an order offering a uniform bounty of fifty dollars to each volunteer who should enlist and be mustered into the

service of the United States in any regiment or battery. The terms of the order do not include a separate company like that of the State Provost Guard; and as that company was understood to be formed for a duty less onerous and dangerous than that to which other volunteers were to be called, and as it was, so far as we are informed, the only organization in the State not coming within the terms of the order, it is probable that the State authorities deemed it important to confine the offer of bounty to volunteers for service in the field. Under this order the Quartermaster General is of the opinion that he has no authority to pay a bounty to the relator; and a mandamus is now applied for to compel him to do so.

It is insisted on behalf of the relator, that the act referred to only confers upon the Governor a discretion to determine whether he will offer any bounty to volunteers, and if so, how much; but that if any is offered, it must be uniform to all, and cannot discriminate between the various organizations, or the different branches of service. In the case of *The People v. Quartermaster General*, 12 *Mich.* 191, this court decided that when a bounty was offered under this act, it must be paid to all persons included within the terms of the offer; and that the State authorities could not discriminate and pay the bounties to some, and withhold them from others. We have no doubt of the correctness of this decision. The question presented on this motion, however, is a very different one, and involves the inquiry whether the Governor, in the exercise of his discretion, might not confine the offer of bounty to such organizations, or to such branch of service, as in his opinion the public interest demanded should be first filled, or as should require special inducements to obtain recruits.

It is apparent, from an examination of the statute, that considerable latitude was designed to be allowed for the exercise of the Governor's discretion, and that he was not even required to offer any bounty at all, unless he should deem it important. The main purpose of the statute was to confer upon

14 MICH.—D.

him the power; but to what extent, within the limits fixed, the power might require to be exercised, was left to him for determination. Whether bounties would be needed or not, would depend upon circumstances which could not then be foreseen, and which might vary from time to time with the varying phases of the war. There was a manifest propriety, therefore, in referring the subject of bounties to the commander-in-chief, instead of fixing an unbending rule by legislative enactment.

But the reasons which required that it be left to the Governor to decide whether any bounty should be offered, and if so, to what amount, would with equal force demand that the selection of the beneficiaries should also be left discretionary with him. If it was impossible to foretell whether any bounty at all would be required, it was equally impossible to determine, in advance, whether the demands of some particular branch of the service might not require that some special inducements should be offered for enlistments. If, in fact, the Governor had found, when he was called upon to determine the question, that there was no difficulty in filling up the ranks of the cavalry by enlistments, and that that branch of the service was quite as readily entered into without bounties, as the infantry service with, a legislative act that should bind him to offer a bounty to the volunteer in the cavalry, where it was not necessary, in order that he might be enabled to pay one to the recruit in the infantry, who would not go without it, would, to say the least, be unwise and improvident legislation.

The position of the relator would require us to hold, that if any bounty at all was offered, it must necessarily be made payable to every volunteer, notwithstanding some classes might be expressly exempted from the offer; so that if the offer was for enlistments in the infantry exclusively, those in the cavalry would also be entitled to the same bounty. This is limiting the discretion of the Governor within very narrow

bounds, and we find nothing in the statute which warrants this conclusion.

The argument is, that the bounty is to be *uniform*, and therefore it must extend and apply equally to all the persons to whom the Governor, by the terms of the act, is authorized to offer it. Such a construction strikes us as quite too technical for a law conferring discretionary power to meet future contingencies. The provision that the bounty shall be uniform is met in spirit and to the letter, when the offer is made uniform to all who come within its terms. Nothing is left to the discretion either of the Governor or the Quartermaster General, after the offer is made: they cannot select classes of persons to receive the benefit of the act, and exclude the rest, but they must pay to all impartially who have acted in reliance upon the offer. This is all that the requirement of uniformity demands, and this has been done in the present case.

It is true that, by the act, the authority conferred upon the Governor was to pay a uniform bounty of not exceeding fifty dollars to *each* volunteer who might enlist, &c.; but it is evident that the word *each* was here used only as restrictive of the amount that could be paid, and not as designating the persons who should be included within the offer of bounty. The amount offered must not exceed fifty dollars to each person to whom it was deemed necessary to offer it; and this restriction upon the amount to be paid is the only one, besides the requirement of uniformity, which we find imposed by the act upon the Governor's discretion in offering bounties to volunteers in the organizations specified.

We are of opinion that the members of the Michigan Provost Guard are not entitled to the State bounty under the order which was made, and that the mandamus must be denied.

The other Justices concurred.